**OLYMPIA EQUIPMENT LEASING COMPANY, ALFCO Telecommunications Company, and Paula Jeanne Feldman, personal representative of the estate of Abraham Feldman, Plaintiffs-Appellees,**

v.

**WESTERN UNION TELEGRAPH COMPANY, Defendant-Appellant.**

**No. 85–3150.**

United States Court of Appeals, Seventh Circuit.

On Rehearing Oct. 6, 1986.

Andrew Hartzell, Jr., Debevoise & Plimpton, New York City, for defendant-appellant.

Bruce S. Sperling, Paul E. Slater, Stephen J. Spitz, Sperling, Slater & Spitz, Chicago, Ill., for plaintiffs-appellees.

Before BAUER, Chief Judge, and POSNER and FLAUM, Circuit Judges.

PER CURIAM.

Olympia has petitioned for rehearing (with the suggestion that it be en banc) of

our decision of July 18, 1986, ordering that the complaint be dismissed. 797 F.2d 370. Since all the members of the original panel have voted against rehearing, and no judge in regular active service on this court has voted for rehearing en banc, the petition is DENIED.

We have thought it appropriate to make a brief statement, however, in response to the principal ground urged for rehearing this matter, which is that the panel "avoided and counter-attacked," rather than following, the Supreme Court's decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985). The other points raised in the petition for rehearing are either ancillary to this one or rest on errors of fact and misstatements concerning the panel's opinion, and, as pointed out in Western Union's answer to the petition, on assertions inconsistent with representations made by Olympia at the argument of the appeal.

The petition characterizes as willful the panel's refusal to accept Olympia's argument that the outcome of this case is dictated by *Aspen.* The petition suggests that the panel considered *Aspen* "trumped" by a 10–year-old book written by a member of the panel—a book not cited or mentioned by the parties, or in the panel's unanimous opinion. The petition both characterizes the opinion as a "frontal assault" on *Aspen* and suggests that it is a sneaky end run effected by making findings of fact at the appellate level.

Barely visible behind the clouds of invective is a serious and debatable argument concerning the scope of *Aspen,* to which the panel devoted extended consideration. See 797 F.2d at 377–79. Although recognizing the possibility that reasonable persons might differ on the proper interpretation of *Aspen* in the circumstances of the present case, we adhere to our conclusion that *Aspen* is distinguishable and that in this case no rational finder of fact could find exclusionary conduct.

The uncontested facts show that Western Union, as a means of making its exit from the market for telex terminal equipment, provided its salesmen with a list of independent vendors of such equipment, including Olympia, but that later, deciding that liquidation of its own equipment inventory was proceeding too slowly, withdrew the list, thereby compelling Olympia to recruit its own sales force, which it was unable to do. We held that on these facts no violation of section 2 of the Sherman Act could be found.

*Aspen,* as we pointed out, is generically similar to this case in that it too is a case about the severing of a cooperative relationship between a firm with monopoly power and a competing firm. But there the resemblance ends. Aspen Skiing owned three of the four mountains in the Aspen ski complex, and Aspen Highlands the other one. Each company offered their customers a joint ticket—i.e., one usable on all four mountains—because the customers wanted the variety. The litigation was precipitated by Aspen Skiing's decision to stop offering the joint ticket. Skiers would now have a choice between buying one ticket from Aspen Skiing, giving them access to three mountains, or, if they also wanted the fourth, buying two tickets.

The differences between *Aspen* and the present case are numerous. First, the joint ticket (a) was used in other multi-mountain ski complexes and (b) had originated in Aspen at a time when the various mountains had been under separate ownership and competed with each other. The vendor list in this case, which in effect made Western Union's sales force the sales force for competing suppliers of telex terminal equipment as well, was not shown to be common in the industry or the kind of convenience that customers will demand and be supplied in a competitive market. Indeed, it was a device by which Western Union was trying to ease its way out of this market. Second, and related, competition had forced Aspen Skiing to enter into a cooperative relationship with Aspen Highlands. The Court held that the acquisition of monopoly power did not authorize Aspen Skiing to terminate the relationship, to the

disadvantage of consumers as well as of Aspen Highlands. But competition did not force Western Union to provide a vendor list to its customers; it took this step because it wanted "out" of this market, and rescinded it not because its monopoly power had grown but because it wasn't getting out fast enough! Third, Aspen Highlands could not "fight back" by acquiring two more ski mountains in Aspen so that it, too, would be able to offer a three-mountain ticket; there are no other ski mountains in Aspen, and no possibility of creating some. But other vendors of telex terminal equipment could and did hire their own salesmen. Fourth, in the unusual factual setting of the *Aspen* case the cancellation of the joint ticket appeared to be a gratuitous effort to obtain a competitive advantage, even at some cost in customer good will. In this case, there is no evidence that consumers noticed or cared about the withdrawal of the vendor list, and Western Union, far from trying to expand its market share, was, so far as appears, trying to get out of the market completely; it just wanted to be sure that when it left it wouldn't have a big equipment inventory that might have to be sold for scrap.

Obviously it would be absurd to say that because the facts of *Aspen* are not identical to those of this case, we can ignore *Aspen*. We neither said nor meant any such thing. The relevant factual differences are not the differences between snow and teletype or between a mountain and a piece of paper; they are differences in competitive history and circumstances, conditions of entry, etc., which enabled a rational jury to infer that Aspen Skiing was engaged in anticompetitive conduct, but would not enable a rational jury to infer that Western Union was so engaged. On the facts summarized above and in the panel opinion, facts which are either undisputed or indisputable on the record, we do not see how section 2 of the Sherman Act could be construed to supply Olympia with a claim for relief, unless there is a general principle of antitrust law that a competitor is entitled to the assistance, in selling its product, of any firm in its market that happens to have monopoly power. A monopolist is not required to subsidize its competitors by doing their selling for them— Olympia's essential claim. We do not read *Aspen* to establish such an entitlement under antitrust law. Certainly nothing in the Supreme Court's opinion purports to effect so drastic an expansion in the accepted scope of liability under section 2, and in declining to infer such a principle through a process of reading between the lines we are not guilty of defying our judicial superiors.

FLAUM, Circuit Judge, with whom BAUER, Chief Judge, joins.

It is with regret and reluctance that I write on this matter on behalf of myself and Chief Judge Bauer. The inappropriate tone of the petition for rehearing submitted in this appeal, however, compels this brief comment.

We accept the proposition that this court, in any given opinion, can misapprehend the facts, or mistakenly apply the law, or even overlook important facts or controlling law. But to state as does the petition for rehearing in this case that a judge of this court has seized an opportunity to preempt a ruling of the United States Supreme Court and emasculate its principles while purporting to give the case careful and respectful consideration is simply, in our view, beyond the bounds of acceptable aggressive appellate advocacy.

Moreover, to charge that the panel opinion engages in rampant *de novo* factfinding, ignores or misstates uncontested facts, and treats other factual issues as questions of law to be redecided on appeal constitutes neither respectful nor responsible pleading. In addition, to conclude, at least by implication, that the above described approach is undertaken to advance the individual legal/economic views of the authoring judge is an inappropriate commentary on the perceived thrust of the panel opinion issued in this case as well as the role of the other panel members.

220

This case represents significant litigation with difficult issues. Substantial, indeed spirited, disagreement can reasonably exist over the treatment of the legal questions in this matter and how they are to be addressed. In fact, despite the deficiencies in the civility of the petition, these arguments are to be found. What is not to be found is justification for counsel of the professional stature and accomplishment of the attorneys for the appellees to be signatories to a brief of such a disrespectful nature.